## *In The United States District Court*
## *For The District of Utah*

| | |
|---|---|
| **XACTWARE, INC., a Utah Corporation**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SYMBILITY SOLUTION INC., a Canadian Corporation,**<br><br>**Defendant.** | **Memorandum Decision and Order**<br><br>**Case No. 2:05 CV 603 JTG**<br><br>**Judge J. Thomas Greene** |

This matter comes before the court on defendant Symbility Solutions, Inc.'s ("Symbility") motion to dismiss plaintiff's complaint for lack of personal jurisdiction. Defendant submits that lack of personal jurisdiction and improper venue preclude adjudication in this District of plaintiff's claims of patent infringement, unfair competition, and other grievances under any of plaintiff's asserted grounds for personal jurisdiction, including: (1) Utah's long arm statute based upon transaction of business and contacts sufficient to comply with federal due process of law requirements; (2) commission of a tort injury under the patent statute; and (3) exercise of jurisdiction pursuant to Rule 4(k)(2) Fed. R. Civ. P., under the so-called federal long arm statute.

After review of the entire record, this court determines under the totality of circumstances that defendant's Motion to Dismiss is Granted as to all of the asserted grounds for

personal jurisdiction raised by plaintiff, in accordance with this Memorandum Decision and Order.

Plaintiff Xactware, Inc. ("Xactware") is a Utah corporation organized under the laws of the State of Utah, with its principal place of business in Orem, Utah.  Xactware designs and produces building estimation software and services for the insurance industry.  Symbility is a Canadian corporation with its principal place of business in Kitcher-Waterloo, Ontario, Canada.  Symbility also distributes and sells building estimation software and services to the insurance industry.  Xactware alleges that without authorization Symbility has offered to sell estimation software and services protected by Xactware's '945 and '383 patents in the United States, including the District of Utah.

## I. Personal Jurisdiction in Patent Cases – Under Federal Circuit Law

Symbility moves this court to dismiss plaintiff's complaint under Rule 12(b)(2) and 12(b)(3) of the Fed. R. Civ. P. for lack of personal jurisdiction and improper venue.[1] Symbility asserts that it is not subject to the general jurisdiction of any District in the United States.  Also, Symbility claims that it is not subject to specific personal jurisdiction in the District of Utah.  In this regard, Symbility asserts that it has never conducted any activity in Utah, and that the Utah long-arm statute does not apply in this case because Symbility has not had sufficient contacts in the District of Utah necessary to meet due process standards.  In

---

[1]Symbility asserts that if this court finds that jurisdiction does exist in the District of Utah, the court should also find that venue is improper in this District.  However, the issue is controlled by the jurisprudence of the Federal Circuit Court of Appeals which has held that "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prods, Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005).  Thus, in this case the venue argument is a non-issue because if jurisdiction exists, venue exists.

addition, defendant asserts that Symbility's internet sites do not provide a sufficient basis to confer jurisdiction because Symbility has not targeted, solicited, or directed any of its activities toward Utah residents.  Finally, Symbility asserts that its primary website is passive, that its interactive website has not created a nexus with Utah, and that no user has ever been from Utah.

Plaintiff argues that Symbility is subject to jurisdiction in the District of Utah because at relevant times Symbility's two websites contained no restriction or prohibition concerning use by residents of Utah.  Additionally, Xactware asserts that the cumulative effect of acts by Symbility were manifestly available without restriction and directed at Utah.  Examples of such invitational actions by Symbility are given by Xactware as follows: paying for national advertising and press releases, which were accessible by Utah residents; sending sales people to trade shows in Texas, Nevada, and New Jersey, which trade shows were openly directed at all visitors, including individuals from Utah; and having a toll free phone number that did not restrict use by Utah residents.

Whether a district court has personal jurisdiction over a defendant in a patent infringement case is determined under applicable Federal Circuit case law.  *Trintec Indus., Inc. v. Pedre Promotional Prods, Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005).  Under Federal Circuit law whether personal jurisdiction exists in a patent infringement case is ordinarily measured by a two part test: (1) "does jurisdiction exist under the state long-arm statute?" and (2) "if such jurisdiction exists, would its exercise be consistent with the limitations of the due process clause?"  *Id*.  The Federal Circuit's two step analysis may coalesce into one inquiry as to the limits of the due process clause due to the reach of a state's long-arm statute.  *Trintec*, 395 F.3d at 1279.  In Utah, the Utah Supreme Court has defined "transaction of business" broadly, stating

-3-

that it should only be limited by the constraints of the federal due process clause.  *Synergetics v. Marathon Ranching Co.*, 702 P.2d 1106, 1110 (Utah 1985).

In cases such as Utah's broad long arm statute, Federal Circuit case law will determine the limits of federal due process:

> While we defer to the interpretation of a state's long arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process, when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies.

*3D Sys., Inc. v. Aarotech Lab., Inc.*, 160 F.3d 1373, 1377-78 (Fed. Cir. 1998) (internal citations omitted); *see also Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000).

Where, as in Utah, it is clear that the state long arm statute is intended to reach the limit of federal due process, the Federal Circuit has established a three part test to determine personal jurisdiction, as follows: "(1) whether the defendant purposefully directed activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair."  *3D Sys.*, 160 F.3d at 1378.

*First Test Under Federal Circuit Analysis:*
*Purposeful Direction of Activities at Residents of Forum – In General*

Concerning the first prong, the Supreme Court has ruled that a defendant who reaches out beyond his or her native state, and creates ongoing relationships and obligations with citizens of the forum state, becomes subject to the forum state's jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479-80, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Travelers Health Assn. v. Commonwealth of Virginia ex rel. State Corp. Com'n*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). These ongoing relationships and obligations create the necessary

-4-

minimum framework so as not to offend traditional notions of fair play and substantial justice.
*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).  Courts
have emphasized "purposeful availment" thusly: "[i]n first focusing on the defendant's interest,
courts look for a purposeful act by which defendant avails himself of the privileges and
protections of the forum."  *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d
1283 (1958).

> In other words, to meet the first test in the case at bar, the defendant must have
"intentionally directed" or "expressly aimed" its activity at Utah residents.  *iAccess, Inc. v.
Webcard Technologies, Inc.*, 182 F.Supp.2d 1183, 1186 (D. Utah 2002) (citing *Ashi Metal Indus.
Co., Ltd. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed. 2d 92 (1987); *Calder v.
Jones*, 465 U.S. 783, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

> This court finds that no such intentionally directed activity was expressly aimed at
Utah in this case.

### *Purposeful Availment – Through the Internet*

> Establishing jurisdiction through the Internet, or more specifically through a
website, has been analyzed by some courts under a framework of three general categories lying
along a sliding scale.  *Zippo Mfg. Co. v. Zippo Dot Come, Inc.*, 952 F.Supp. 1119, 1123-24
(W.D. Pa. 1997).  As described in *Zippo*, at one end of the spectrum business is clearly
conducted through the entering of contracts requiring repeated transmission of files over the
Internet.  These <u>active</u> websites subject the host provider to the user's jurisdiction.  At the
opposite end are <u>passive</u> websites which do little more than provide available information to the
interested user and do not present proper grounds for the exercise of personal jurisdiction.  The

middle ground contains <u>interactive</u> websites where users can <u>exchange information</u> with the host computer. Jurisdiction in these cases depends on "the <u>level of interactivity and commercial nature</u> of the exchange of information that occurs on the [website]." *Id*. (emphasis added); *see also Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (holding passive website to be an invalid reason for granting jurisdiction); *Patriot Sys., Inc.*, 21 F.Supp.2d at 1323-24 (concluding that defendant's passive Internet website did not support the exercise of personal jurisdiction); *accord Stewart v. Hennesey*, 214 F.Supp.2d 1198, 1203-04 (D. Utah 2002) (holding interactive website conducted sufficient business in that case to confer specific jurisdiction).[2]

An "interactive website" can establish jurisdiction when a defendant clearly conducts business through its website or emails. Thus, a website may progress along the spectrum depending upon actual interactions. *Compare Patriot Sys., Inc.*, 21 F.Supp.2d at 1324 (acknowledging that websites are analyzed through a *spectrum* analysis) *with Soma Medical Int'l*, 196 F.3d at 1296 (examining *specific facts* for website analysis). However, even under this sliding categorization of websites, courts have looked to find "<u>something more</u>" that creates actual acts directed at the forum state other than the mere existence of an interactive website. *iAccess*, 182 F.Supp.2d at 1187-89 (quoting *Benususan Restaurant Corp. v. King*, 937 F.Supp.

_____

[2]In *Stewart v. Hennesey*, 214 F.Supp.2d 1198, this court found that the interactive website included advertisements, upgrades, and apparel, as well as the ability to view short segments of automobile videos. The user could find directions to Hennesey, could view vehicles for sale, could examine employment opportunities with the company, and provided for the ability to make on-line purchases. Interested customers could order a catalogue, place orders for materials and automobile equipment directly through the website. In addition, in that case the plaintiff initiated business over the internet, communicating several times via email, and only due to the large amount of the payment did not pay through the website. *Id*. at 1203.

295, 301 (S.D.N.Y. 1996) *aff'd*, 126 F.3d 25 (2nd Cir. 1997) (holding that the creation of a site which may be felt nationwide is not an act purposefully directed at the forum state without more); *GTE New Media Servs. Inc. v. BellSouth* Corp., 199 F.3d 1343, 1350 (D.C. Cir. 2000) (finding that without the requirement of "something more" the constitutional assurances built into the law of personal jurisdiction "would be shredded")).

In the case at bar, plaintiff asserts that defendant targeted Utah residents because Symbility's website was interactive and had no constraints against Utah residents.  However, plaintiff has presented no evidence which demonstrates that Symbility intentionally targeted Utah residents.  *See iAccess*, 182 F.Supp.2d at 1187.  Rather, at most, Utah residents simply were enabled to interact with Symbility's website, although none of them used the website.

Xactware had one of it's employees attempt to access Symbility's website and register under a user name for the software product.  That attempt was only partially successful.[3] Defendant argues that this employee registered after the lawsuit was filed in this case, and that he registered from "Orem, Idaho," not "Orem, Utah."  Plaintiff admits that this was after the lawsuit, that there is no Orem, Idaho, and that the employee registered as living in the State of Idaho, but argues that it is demonstrative of what was available to Utah residents before this lawsuit was filed, and before Utah was restricted and removed from defendant's interactive registration form.[4]

---

[3]Plaintiff's employee was only able to register and was never able to gain access to defendant's product or able to download defendant's software.

[4]Plaintiff also argues that defendant's acceptance of the $100 registration fee is also demonstrative in that Symbility has not refunded the money after learning the individual was really a resident of Orem, Utah.  However, Symbility assured the court that the money was returned to the individuals address which was registered under Orem, Idaho.

Plaintiff asserts that defendant's website is designed to reach out and attract customers to its business.  Further, that defendant's interactive website invites those who have access to the site to enter into contractual relationships with defendant, become registered with the defendant, pay for software and services, and download the purchased product (the requested software) from the website, all directly through the interaction with defendant's website. Plaintiff relies upon *iAccess, Inc. v. Webcard Technologies, Inc.*, 182 F.Supp.2d 1183, as well as two other cases which the *iAccess* court relied upon to support its position, *Biometrics, LLC v. New Womyn, Inc.*, 112 F.Supp.2d 869 (E.D. Mo. 2000) and *Multi-Tech Sys., Inc. v. VocalTec Commc'n, Inc.*, 122 F.Supp.2d 1046 (D. Minn. 2000).[5]  However in *iAccess*, 182 F.Supp.2d at 1189, the court held that the mere existence of a moderately interactive website was not sufficient to create personal jurisdiction.

Most importantly, Xactware's argument that the mere availability of Symbility's website to Utah residents is sufficient to establish purposeful acts, was rejected by the Federal Circuit, which stated that "the ability of [Utah] residents to access defendant's websites . . . does not by itself show any persistent course of conduct by defendants in [Utah]."  *Trintec*, 395 F.3d at 1281(quoting *GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000)).

Finally, plaintiff's argues that defendant purposely directed activities at Utah because, in addition to the existence of the websites, defendant paid for national advertising and

---

[5]The *iAccess* court also found that both cases, *Biometrics* and *Multi-Tech Sys.,Inc.*, involved interactive websites that targeted the forum states with advertising directed at the forum residents, and <u>actual sales</u> were made to residents.  *Id*. at 1188-89; *see also Biometrics, LLC v. New Womyn, Inc.*, 112 F.Supp.2d 869, 873 (E.D. Mo. 2000),  *Multi-Tech Sys., Inc.*, 122 F.Supp.2d 1046, 1051 (D. Minn. 2000)

conducted booths with representatives to explain its product at multiple trade shows.  Plaintiff

asserts that these factors, coupled with the existence of defendant's website, show that Symbility

designed its system to reach out to Utah residents, and established purposeful acts directed at

Utah residents.

Symbility acknowledges that its www.symbility.net site does have interactive

features, but asserts that an individual must first be a registered user before he or she can enter

into and use these interactive features.  Defendant argues that because it can control access to

this interactive site the website in reality falls lower on the *Zippo* scale than most interactive

websites.  Moreover, the uncontroverted evidence shows that no individual from Utah ever

visited the interactive website prior to the filing of this lawsuit, and only Xactware's failed

attempt to register as a resident of Utah has occurred since plaintiff filed its complaint.  In

regards to the advertisements, Symbility asserts that all advertisement was at a national level,

with no advertisement directed at Utah residents.

A review of all the facts before the court, as well as applicable case law, reveals

several infirmities in plaintiff's position under this prong of the Federal Circuit test.  Xactware

has not produced any evidence of activity by an individual or entity in Utah.  In this regard,

plaintiff's reliance on an unilateral attempt by one of its employees to establish jurisdiction is

insufficient.  *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359

(Fed. Cir. 1998) (finding that random, fortuitous, attenuated contacts, or unilateral activity of

others do not count in determining minimum contacts calculus).  In this case, the attempt by

Xactware to have an employee access and register under Symbility's website was not only <u>after</u>

the case was filed with this court, but it was done in a less than forthright manner.  In the best

light, such acts could only serve to show an interaction with a resident of <u>Idaho</u>, not Utah.

     Plaintiff has not put forth any evidence to establish that Symbility's advertising was directed at Utah residents, or that the national advertising ever reached or was used by Utah residents.  Xactware's reliance on Symbility's national advertisement on InsuranceStates Comprehensive Insurance Services Web Directory is not persuasive.  Symbility admits that it paid for an enhanced listing on the website.  However, that advertising was under the category of "software" and not "Utah" as plaintiff urges.  While both parties agree that the category of "software" is an available link from the Utah page, Symbility, for purposes of directed acts at this forum, is not responsible for a third party's unrelated hyperlink on that site.  *Trintec Indus.*, 395 F.3d at 1281.  The evidence presented clearly shows that Symbility's advertisement only is available on the software link, and in no way appears on the Utah page for advertising.  As such, Symbility's national advertisement does not rise to the level of purposeful acts directed to this forum.

     In regard to the presence and actions of Symbility's representatives at national trade shows, plaintiff has also failed to present evidence that any representative of defendant interacted with any resident of Utah at such trade shows.  Accordingly, the assertion by plaintiff that the presence of representatives of defendant at national trade shows ipso facto created purposeful availment directed at Utah residents is not persuasive.

     This court finds that plaintiff has not established that defendant "intentionally directed" or "expressly aimed" its internet activities at Utah residents.  *See iAccess, Inc.*, 182 F.Supp.2d at 1186.  In this regard, the existence of the moderately interactive website has simply had no use or interaction from Utah residents.  Furthermore, the argument that somehow the

-10-

cumulative evidence creates a sufficient basis to infer the existence of purposeful availment is equally void of intentionally directed acts sufficient for this court to assert jurisdiction over Symbility.

*Second Test in Federal Circuit Analysis:*
*Whether Claim Arises from or Relates to Purposeful Activities.*

The second step in the Federal Circuit's analysis presents an even higher hurdle for plaintiff to overcome.  *See 3D Systems*, 160 F.3d at 1378; *accord Hanson v. Denckla*, 375 U.S. 235, 251 (1958) *and Nova Mud Corp. v. L.H. Fletcher*, 648 F. Supp. 1123, 1126 (D.Utah 1986) (finding "the second step in a jurisdictional analysis is to determine whether [plaintiff's] claim *arises out of* [defendant's] activity within Utah")(emphasis in original).  In *iAccess*, the court found that one $20.00 purchase by a Utah individual was not a sufficient nexus with the forum residents and the website because, as in the case at bar, no evidence existed that a single Utah resident ever visited the website.  *iAccess, Inc.*, 182 F.Supp.2d at 1189.

In the case at bar, there is no evidence that any bona fide Utah consumer accessed Symbility's website or that a single purchase was made via the website before this action was filed.  Moreover, Xactware has failed to establish that any Utah resident ever visited Symbility's interactive website.  As a result, it is apparent that no nexus between the website and Utah existed during the relevant time period.  This court is satisfied that Federal Circuit law would hold that plaintiff's claim cannot be held to arise out of or relate to purposeful activities in this forum.  In this regard, this court finds that no evidence has been produced to demonstrate the existence of a nexus to purposely availed activities via the internet or otherwise.

*Third Test in Federal Circuit Analysis*:
*Whether Assertion of Utah Jurisdiction Would be Reasonable and Fair.*

Because plaintiff has not sufficiently established either of the first two prongs of the Federal Circuit's analysis, this court finds under the third prong that the assertion of personal jurisdiction would be unreasonable and unfair, and that such would also be the finding under Federal Circuit law.  *See 3D Sys.*, 160 F.3d at 1378.

## II.  TORT INJURY IN PATENT CASES – SUBMISSION TO PERSONAL JURISDICTION

Alternatively, Xactware claims that Symbility committed tort injury to plaintiff in Utah, and therefore has submitted itself to personal jurisdiction in Utah.  Xactware argues that because defendant's actions would have foreseeable impact in Utah, the exercise of personal jurisdiction is proper.  Symbility agrees that patent infringement is a tort, and that in a proper case an "offer to sell" could subject a defendant to personal jurisdiction.  However, defendant argues that in this case no acts occurred in Utah which could amount to an "offer to sell".  This court agrees.

*Offer to Sell – Sales via Internet*

In *Commissarait A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1318 (Fed. Cir. 2005), the Federal Circuit held "[o]ur cases make clear that the tortious injury caused by patent infringement occurs within the state where the allegedly infringing sales are made."

In the case at bar, it is abundantly clear because of the lack of evidence or proof of the existence of a bona fide customer in Utah, that no tortious injury caused by an allegedly infringing sale of Symbility's software occurred within the District of Utah.

*Offer to Sell – Under Patent Statute*

Plaintiff argues that under the language of 35 U.S.C. § 271(a) a tort has been committed in Utah sufficient to meet and satisfy both the Utah long-arm statute and the constraints of due process.  35 U.S.C. § 271(a) provides:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent. (Emphasis added.)

Xactware asserts that Symbility made an "offer to sell" because of the information presented on its websites, including the price for its software and service.  Plaintiff further asserts that defendant's "offer to sell" in and of itself constituted an infringement of its patents to the commercial detriment of Xactware in Utah.  As a result, plaintiff claims that Symbility submitted itself to personal jurisdiction in this District.

The Federal Circuit in *3D Systems v. Aarotech Laboratories*, 160 F.3d 1373, 1379 (Fed. Cir. 1998), held that patent infringement exists solely by federal statute, and as such an "offer to sell" involves "the construction of the federal statute and not a state's common or statutory law."  In *3D Systems*, the court found under §271(a) that the defendant's letters to California residents that included a description of the infringing product with price quotations created an "offer to sell" to those particular residents in a federal District in California.  *Id*. However, a much different analysis was reached in *Rotec Indus., Inc. v. Mitshsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000).  In that case, the Federal Circuit revisited *3D Systems*, and the interpretation of "offer to sell",  in light of the Supreme Court's decision in *Pfaff v. Wells*

*Electronics, Inc.*, 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998).[6]  In *Rotec Indus., Inc.*, the

court found that "offer to sell" in § 271(a) was to be defined "according to the norms of

traditional contractual analysis," interpreted to the ordinary meaning under contract law.  *Id.* at

1255.   In regard to an "offer to sell" under § 271(a), the court held "[i]n the absence of a

communication with a third party, it is difficult to imagine any commercial detriment of the

rightful patentee taking place."[7]  *Id.*  In *Moldflow Corp. v. Simcon, Inc.*, 296 F.Supp.2d 34, 43-44

(D. Mass. 2003), the court found that in order to be an "offer to sell" an offer must create a

power of acceptance in the offeree.  Furthermore, the court held that in order to have the power

of acceptance an offer must be sufficiently definite.  Therefore, the lack of definite terms in a

---

[6]In *3D Systems*, 160 F.3d at 1379, the court held that "[t]he statutory character of the 'offer to sell' requires us to look back to federal law on the conceptualization of the 'offer to sell' itself."  However, the court in *Rotec*, 215 F.3d at 1254, took special note that *3D Systems* was issued just shortly after the Supreme Court in *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261, and in that case the Supreme Court held that the basis of § 102(b) "on-sale bar" interpretation was according to the norms of traditional contract law.  The *Rotec* court found the *Pfaff* Court's holding that for the § 102(b) "on sale bar" to apply, "the product must be the subject of a commercial offer to sale" of particularly importance.  *Rotec*, 215 F.3d at 1254 (quoting *Pfaff*, 525 U.S. at 67, 119 S.Ct. 304, 142 L.Ed.2d 261).  In this regard, the *Rotec* court held that "[t]his analysis is not divergent from our § 271(a) analysis."  *Id.*

[7]The *Rotec* court reasoned that to find otherwise
would effectively prohibit a patentee's competitors from: (1) studying a patent in anticipation of its expiration; (2) estimating the cost of producing a disclosed invention before the date of expiration; or (3) reviewing a patent to ascertain whether the claims read on a product currently in development. After all, each of these activities could also lead to "generating interest ... to the commercial detriment of the rightful patentee." *3D Systems,* 160 F.3d at 1379 n. 4. This interpretation goes far beyond the limited "right to exclude" provided under § 271(a). Furthermore, it ignores an object of the patent law as important as providing incentives to invent: disclosing new ideas to the public. *See Paulik v. Rizkalla,* 760 F.2d 1270, 1276 (Fed. Cir.1985).
*Rotec Indus., Inc. v. Mitshsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000).

communication makes that communication only an advertisement or a solicitation.[8]  *Id.*

Moreover, in *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 333 (D.S.C. 1999), the

court held that even if the website constituted an "offer to sell", plaintiff made no factual

demonstration that an "offer to sell" was made in the state by virtue of residents actually viewing

the website.

Based upon the foregoing, this court finds that plaintiff failed to establish a

purposeful act or acts directed at residents of Utah, and that the "offer to sell" was not

sufficiently definite, carrying no power of acceptance due to the lack of definite terms, thus

constituting only an advertisement or possible solicitation.[9]

### III. PERSONAL JURISDICTION BASED UPON RULE 4(K)(2)

Finally, plaintiff argues that this court has jurisdiction through the application of

Federal Rules of Civil Procedure Rule 4(k)(2).  Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the
> United States, serving a summons or filing a waiver of service is also effective,
> with respect to claims arising under federal law, to establish personal jurisdiction
> over the person of any defendant who is not subject to the jurisdiction of the
> courts of general jurisdiction of any state.

---

[8]The *Moldflow* court found a lack of necessary terms to create the power of acceptance
on the part of the recipients. Specifically, the materials did not include information about
quantity, time of delivery, or terms of payment; and therefore, the terms were not sufficiently
definite to create the power of acceptance and hence were not "offers to sell" under § 271(a).

[9]*See supra* note 8.  Xactware argued and presented unilateral acts on its part to view and
access Symbility's websites and product.  However, unilateral acts are insufficient for the
purpose of personal jurisdiction.  *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,
148 F.3d 1355, 1361 (Fed. Cir. 1998)(noting that the Supreme Court has made clear that contacts
resulting from "the unilateral activity of another party or third person" are not attributable to a
defendant); *see also Rotec Indus.*, 215 F.3d at 1254-55 (finding that communication is required
by a third party).

-15-

Plaintiff argues that since no District within the United States has general jurisdiction over defendant, any District in the United States – including the District of Utah – which has sufficient contacts to support compliance with due process, may assert jurisdiction in an action against defendant.

Symbility argues that Rule 4(k)(2) is not applicable in this case, because Symbility is subject to personal jurisdiction under the reach of long arm statute in another state, namely the Eastern District of Michigan.[10]  Symbility asserts that jurisdiction exists in Michigan, in which a resident has acquired and is using the alleged infringing software in that state.  In this regard, Symbility filed a subsequent civil action in the Eastern District of Michigan seeking declaratory relief concerning the same subject matter as the complaint before this court.[11]

Rule 4(k)(2) is essentially a federal long-arm statute.  *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005) (citing *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir.1999)); *see also Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004).  In *Mwani v. bin Laden*, 417 F.3d 1,10 (D.C. Cir. 2005), the District of Columbia Court of Appeals ruled that by virtue of Rule 4(k)(2) a federal long-arm provision exists which, in some circumstances, eliminates the need to utilize the forum state's

---

[10]Xactware asserts that the Eastern District of Michigan should be excluded from consideration because even though defendant has submitted to jurisdiction there it did so in connection with a virtually identical action filed there <u>after</u> the action in Utah was filed.

[11]Symbility stated in open court that its purpose in filing the subsequent suit in Michigan was not an effort to create a conflict between the two courts but to insure that the merits are heard by whichever court is found to have jurisdiction.  Symbility stated that the Michigan action was stayed pending this court's ruling. If this court finds jurisdiction to exist in the district of Utah, Symbility stipulated in open court to the dismissal of the Michigan case.  If this court does not find personal jurisdiction to exist in Utah, Symbility has submitted to the existence of personal jurisdiction in Michigan.

long-arm statute.  Neither the Federal Circuit Court of Appeals nor the Tenth Circuit Court of

Appeals has directly addressed the application of Rule 4(k)(2).

   In order to obtain jurisdiction over a defendant under Rule 4(k)(2), three

requirements must be met.  <u>First</u>, the suit must arise under federal law.  <u>Second</u>, the defendant

must not be subject to personal general jurisdiction or personal specific jurisdiction in any state.

<u>Third</u>, the defendant must have sufficient contacts within the United States which would support

and be consistent with the Constitution and laws of the United States.[12]  *Saudi*, 427 F.3d at 275 ;

*see also Mwani*, 417 F.3d at 10; *Adams*, 364 F.3d at 651; *and* Fed. R. Civ. P. 4(k)(2).

   The *Mwani* court acknowledged that "[d]etermining whether a defendant is

subject to the jurisdiction of a court "of any state" presents no small problem," but said:

> *[a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed*. Naming a more appropriate state would amount to a consent to personal jurisdiction there (personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable).

*Mwani*, 417 F.3d at 11 (emphasis added) (citing *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,

256 F.3d 548, 552 (7th Cir.2001)).  Moreover, in *Adams*, 364 F.3d at 650, the court explained

the purpose of Rule 4(k)(2) is to provide for personal jurisdiction in cases where a defendant has

contacts within the United States, but that "defendant *is not subject to the jurisdiction in any*

---

[12]Whether the exercise of jurisdiction is "consistent with the Constitution" for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment.  *Mwani*, 417 F.3d at 11 (citing Fed. R. Civ. P.  Rule 4(k)(2) advisory committee's notes to 1993 amendments; *see also Adams*, 364 F.3d at 651; *ISI Int'l*, 256 F.3d at 551.). "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum." *Id*. (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

*particular state*." (Emphasis added).

In the case at bar, Symbility has named the State of Michigan as one state that is more appropriate and has personal jurisdiction over defendant. Symbility asserts that not only has it submitted itself to jurisdiction in Michigan by filing a lawsuit there, concerning the same subject matter and parties as the matter before this court, but it also has a bona fide customer who is registered through it's interactive website, has used the product, and has been trained by defendant. Under the application of current Federal Circuit case law this acknowledgment appears sufficient to preclude the application of the federal long-arm statute under Rule 4(k)(2). *See Adams*, 364 F.3d at 651; *ISI Int'l, Inc.*, 256 F.3d at 552; *Mwani*, 417 F.3d at 11; and *Saudi*, 427 F.3d at 276-77.

Additional evidence presented to the court would also support the preclusion of Rule 4(k)(2) in this case. In this regard, the record shows that Symbility has multiple customers in several states that have registered on Symbility's interactive website. For example, customers in Texas have entered into contracts with Symbility and used Symbility's product in their resident state. In addition, Symbility has sent sales agents to large trade shows in New Jersey, Nevada, and Texas, and advertised its product in person at those shows. It appears clear that Symbility would fall under the specific jurisdiction of one or more of these states,[13] as well as

---

[13]In *Boyes v. Morris Polich & Purdy, LLP*, 169 S.W.3d 448, 457 (Tex. App. 2005), the court stated the required limits of specific jurisdiction in Texas and held:

> To establish specific jurisdiction, the cause of action must arise out of or relate to the non-resident defendant's contact with the forum state, and the conduct must have resulted from that defendant's purposeful conduct, not the unilateral conduct of the plaintiff or others. *TeleVentures, Inc. v. International Game Tech.*, 12 S.W.3d 900, 907 (Tex. App. 2000). Thus, in analyzing minimum contacts for the purpose of determining Texas courts' specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *TeleVentures*, 12

Michigan.

For the above stated reasons, Xactware is precluded from using Rule 4(k)(2) to establish personal jurisdiction in this case.

Based upon the foregoing, it is hereby

**ORDERED**, that defendant's Motion to Dismiss Xactware's Complaint under Federal Rules of Civil Procedure Rule 12(b)(2) is Granted, in accordance with this Memorandum Decision and Order; it is

**FURTHER ORDERED**, that the above entitled matter is dismissed without prejudice to proceedings in the Eastern District of Michigan, or proceedings under the long arm statute in any other District in which there are sufficient contacts to establish specific personal jurisdiction.

DATED this <u>1st</u> day of December, 2005.

_____
J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE

---

S.W.3d at 908; *Michiana Easy Livin' Country Inc. v. Holten*, 168 S.W.3d 777, 789, 2005 WL 1252268, at *6 (Tex. 2005); *Blair Communications, Inc. v. SES Survey Equip. Servs, Inc.*, 80 S.W.3d 723, 727 (Tex. App. 2002). . . . Under the minimum contacts test for specific jurisdiction, we must determine whether [defedant] has had purposeful contacts with the forum state, thus invoking the benefits and protections of its laws.